Lon YANEY, a minor child, by his parents, James YANEY and Jean Yaney, individually, Plaintiffs-Appellants,

v.

McCRAY MEMORIAL HOSPITAL, Kenneth Gunkle, Defendants-Appellees,

and

Nancy Wilson, M.D., (Defendant Below).

No. 3–1085A284.

Court of Appeals of Indiana, Third District.

Aug. 13, 1986.

Ronald L. Sowers, Sowers, Larson, Riebenack & Connolly, Bruce N. Stier, Logan & Stier, Fort Wayne, for plaintiffs-appellants.

Mark Baeverstad, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellees McCray Memorial Hosp. and Kenneth Gunkle.

Richard R. McDowell, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for defendant Nancy Wilson, M.D.

HOFFMAN, Judge.

The appellants, Lon Yaney and his parents, James and Jean Yaney, appeal the grant of summary judgment in their negligence action against the appellee McCray Memorial Hospital. The Yaneys argue that there are factual and legal issues that make the summary judgment improper.

The standard for review of summary judgments is well known. Summary judgment is proper when the pleadings and discovery, together with the affidavits and testimony, liberally construed in favor of the non-moving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C); *Creighton v. Caylor-Nickel Hosp., Inc.* (1985), Ind.App., 484 N.E.2d 1303. Although there may be genuine disputes over certain facts, a fact is material, and thus precludes summary judgment, when its existence facilitates the resolution of an issue in the case. *Id.* With this standard in mind, the following are the facts contained in the record.

On August 14, 1981, Lon Yaney, then nine years old, fell from his bicycle while at a park where he was camping with his family. The resulting blow to his head knocked him unconscious for several minutes, and according to his mother, when he came to he was disoriented, unstable on his feet and complained of a headache.

Lon's parents took him to McCray Memorial Hospital in Kendallville, Indiana. The Yaneys were met in the emergency room by Dr. Nancy Wilson[1] and Kenneth Gunkel, an emergency medical technician employed by the hospital. Mrs. Yaney described what had happened and gave Lon's medical history to Gunkel who also took Lon's temperature while Dr. Wilson began an examination. Dr. Wilson observed Lon's external physical signs and ordered x-rays, which showed that there was no fracture. Based on this information the doctor diagnosed a cerebral concussion and told Mrs. Yaney that Lon would be all right. Mrs. Yaney was given a mimeographed head injury sheet that listed various warning signs of serious head injuries. She was told to return if any of the signs appeared.

The Yaneys returned to the park and put Lon to bed. By the next morning, August 15, Lon's condition had worsened and he was exhibiting several of the symptoms listed on the head injury sheet. Mrs. Yaney called the hospital and ultimately spoke with Dr. Wilson. Dr. Wilson still did not feel that the situation was serious, but told Mrs. Yaney she could bring Lon back in.

At the hospital, the Yaneys were met by Dr. Wilson and taken to an examination room. Mrs. Yaney testified that during this visit she did not not see anyone at the hospital except Dr. Wilson. The doctor re-examined Lon and again told Mrs. Yaney that Lon's condition was not serious.

Shortly after returning to the campground Lon's condition became seriously worse. This time his parents took him to a hospital in Fort Wayne. Enroute Lon began convulsing and at one point his breathing had stopped. By the time they arrived Lon was essentially comatose. He was diagnosed as having an epidural hematoma and emergency surgery was performed to relieve the pressure of the bleeding within his skull. The record reveals that since this incident Lon has had various problems

---

1. Dr. Wilson is only a nominal party to this appeal. The appellees' brief indicates that she remains a defendant in the case. Thus her role in these events is discussed only as necessary and issues regarding her liability are specifically left undecided.

that were allegedly caused by the delayed treatment.

In addition to these essentially uncontroverted facts, the record reveals a substantial question as to what diagnostic procedures were employed at McCray Memorial Hospital. Specifically, the Yaneys claim that neither the hospital employees nor Dr. Wilson ever took Lon's vital signs. There was expert testimony that taking vital signs, that is measuring blood pressure, pulse, respiration and temperature, is standard practice in head injury cases, because the information is an important part of correctly diagnosing a serious injury.

On appeal the Yaneys raise three issues. Restated, these are:

(1) whether the taking or not taking of vital signs is a genuine issue of material fact;

(2) whether the hospital employee's failure to take vital signs and the failure to recognize that Dr. Wilson should have taken the vital signs were separate negligent acts that proximately contributed to Lon's injuries; and

(3) Was the taking of vital signs a ministerial act for which the hospital is liable?

The record clearly reveals a genuine factual issue as to whether Lon's vital signs were taken. In addition to Mrs. Yaney's testimony that vital signs were not taken, Dr. Wilson and Kenneth Gunkel both testified that they did not remember the incident at all; however, the portion of Lon's hospital chart where the information should have been recorded was left blank. Also Dr. Wilson testified, in response to a hypothetical question, that she always took the vital signs of her patients in the emergency room. Therefore, in order to test the materiality of this issue, it will be provisionally accepted as fact that vital signs were not taken.

The Yaneys' second issue is premised on a claim that the hospital had a separate and independent duty to ensure that the care Dr. Wilson provided did not fall below acceptable medical standards.

The rule in Indiana has long been that a hospital is generally not liable for the medical negligence of the doctors on its staff, since by law doctors are considered to be independent contractors. *Iterman v. Baker* (1938), 214 Ind. 308, 15 N.E.2d 365. However, an exception, of sorts, exists when the hospital is aware that the care a doctor is providing has deviated from normal practice. In this situation the hospital must either question the doctor's orders or inform proper authorities. *Poor Sisters of St. Francis, etc. v. Catron* (1982), Ind. App., 435 N.E.2d 305.

In support of their attempt to bring this case within the above exception, the Yaneys point to the evidence that indicates that the taking of vital signs is standard medical practice in head injury cases. They also claim that Kenneth Gunkel knew that taking vital signs was standard procedure. While the record is not clear on Gunkel's knowledge of standard medical procedures, he clearly knew that it was common practice to take and record vital signs. From this evidence the Yaneys argue that Gunkel's failure to take vital signs, which is assumed, and his failure to inform Dr. Wilson that she was deviating from standard medical practice proximately caused the misdiagnosis that exacerbated Lon's injury.

It was exactly on this point that the trial court granted summary judgment. The trial court decided that even if the hospital was negligent in not taking and recording Lon's vital signs, such negligence was not the proximate cause of the misdiagnosis.

It is axiomatic that, regardless of the source of the duty alleged to have been breached, before liability can be imposed, there must be proof that the defendants' negligence proximately caused the plaintiff's harm. *See e.g., Long v. Johnson, et al.* (1978), 177 Ind.App. 663, 381 N.E.2d 93, *trans. denied.* It is also settled law that proximate cause is normally an issue for the jury to decide; however, in indisputable cases, where only a single conclusion can be drawn, the question of proximate cause is a question of law to be determined by

the court. *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, *trans denied.*

■ The test for determining whether a negligent act or omission is the proximate cause of an injury is whether the injury is a natural and probable consequence, which in light of the circumstances, should have been foreseen or anticipated. The key is foreseeability of the ultimate injury as a natural and probable consequence of the act or omission. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, *reh. denied.*

■ In the present case, the only conclusion that can be drawn is, as the trial court found, that if the hospital was negligent in failing to take and record the vital signs, such negligence was not the proximate cause of the misdiagnosis that led to the exacerbation of Lon's injury. From the hospital's perspective, it was not reasonably foreseeable that not taking and recording vital signs would lead to Lon's condition, when the child was then under the direct, actual physical care of a duly licensed physician. If the misdiagnosis was caused by negligence at all, it was the physician's negligence. A hospital cannot be held liable for a misdiagnosis caused by a lack of information that a physician, in the exercise of medical judgment, did not require to be obtained. To hold otherwise would emasculate the rule that a hospital is not liable for a doctor's medical negligence.

The Yaneys' final issue is that the taking and recording of vital signs is a ministerial act for which the hospital is liable. This is based on the rule that while a hospital cannot legally practice medicine and therefore it cannot be liable for medical malpractice, hospitals do perform administrative or ministerial acts that aid the practice of medicine. If a hospital negligently performs these ministerial acts, and such negligence causes injury then the hospital may be liable. *Fowler, Admx. v. Norways Sanatorium* (1942), 112 Ind.App. 347 42 N.E.2d 415, *trans denied; South Bend, etc. v. Phillips* (1980), Ind.App., 411 N.E.2d 387, *trans. denied.*

■ This issue also fails to raise reversible error. Even if the taking and recording of vital signs was a ministerial duty that the hospital breached, such breach did not proximately cause Lon's injury. Lon was, at all times relevant to this appeal, under Dr. Wilson's direct care. Dr. Wilson did not have any opportunity to rely on the hospital's failure to take and record vital signs. Thus, in this case, if Lon's present condition was caused by a negligent failure to take and record vital signs, then it was solely the doctor's negligence. Again, to hold otherwise would make hospitals generally liable for every misdiagnosis where a physician failed to obtain necessary information.

This holding should not be read to say that a hospital can never be liable for failure to convey information. *See, e.g., Keene v. Methodist Hospital* (N.D.Ind. 1971) 324 F.Supp. 233. In *Keene* the hospital was found liable for failure to perform the purely administrative function of communicating a staff physician's findings to the attending physician. The present case is entirely different, because here the information (the vital signs) was never under the hospital's sole control.

Finally, this resolution of the case makes it clear that the issue of whether the vital signs were actually taken is not a genuine issue of material fact as to McCray Memorial Hospital's liability. The dispositive issue in this case is proximate cause and its resolution is unaffected by this factual dispute.

For all of the foregoing reasons, summary judgment was properly granted and the trial court is affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.