Joseph STREET, et al., Appellant,

v.

WASHINGTON HOSPITAL
CENTER, Appellee.

No. 87–1009.

District of Columbia Court of Appeals.

Argued April 6, 1989.
Decided May 17, 1989.

Philip Clarke Baten, Washington, D.C., for appellant.

Richard J. DeFeo, Jr., with whom James P. Schaller, Washington, D.C., was on the brief, for appellee.

1. On April 5, 1988, this court denied two motions related to this appeal: a motion temporari-

Before ROGERS, Chief Judge, FERREN, Associate Judge, and KERN, Senior Judge.

FERREN, Associate Judge:

In this medical malpractice action, appellant claims the trial court erred (1) in denying his motion to stay appellee Washington Hospital Center's (WHC's) motion for summary judgment pending further discovery and (2) in granting WHC's motion.[1] We affirm without addressing the first issue, for we conclude appellant has failed to show that either the facts of record or those he hopes to establish through discovery will be sufficient to raise a jury question concerning WHC's liability under a theory of ostensible agency.

I.

The uncontradicted evidence, viewed in the light most favorable to appellant, reveals that in 1982, appellant Street referred his wife to Dr. Leslie E. Hedgepath, who had acted as Mr. Street's physician for more than ten years. Dr. Hedgepath had been referred to Mr. Street as a doctor with hospital privileges. For several years, Mrs. Street visited Dr. Hedgepath regularly at his private medical office in the Physicians' Building, owned by WHC and located next door to its hospital building, to monitor her diabetes. Dr. Hedgepath was a member of the independent medical staff of WHC and, based on such membership, had received privileges to admit and treat his patients at the hospital as their attending physician. Mrs. Street saw the doctor at his office on October 24, 1985, when she had an enlarged thyroid which the doctor diagnosed as a goiter, prescribing no treatment. During her next appointment, on December 13, 1985, Mrs. Street told Dr. Hedgepath that she was suffering from shoulder pain. Before her next scheduled appointment on January 10, 1986, Mrs. Street called the doctor complaining of severe pain; he prescribed a painkiller. On January 10, 1986, Dr. Hedgepath sent Mrs.

ly to stay further proceedings and a motion to supplement the record.

Street to the WHC hospital building for thyroid function blood tests. The results, which were negative, were forwarded to him. This was Mrs. Street's only contact with the hospital itself; she has never been admitted there as a patient. On January 15, Mrs. Street sought further treatment for the shoulder pain from a rheumatologist. He referred her to a third physician, who diagnosed thyroid cancer on January 23. On January 29, Mrs. Street's thyroid was removed. Her physician discovered that the cancer had metastasized and was terminal. Mrs. Street died on November 24, 1986.

Appellant's amended complaint alleged medical malpractice against Dr. Hedgepath for failure to diagnose his wife's thyroid cancer. The complaint further alleged that the doctor had committed the malpractice while acting as the agent, servant, or employee of WHC. In its May 26, 1987, motion for summary judgment, WHC sought dismissal as a defendant, arguing that Dr. Hedgepath was not, nor at any time relevant to the lawsuit had ever been, an agent, servant, or employee of WHC. On June 8, appellant requested a stay of WHC's motion for summary judgment, seeking further discovery to prove that while Dr. Hedgepath, as an independent contractor, was not an actual agent of WHC, there was a material issue of fact as to whether he had acted as an ostensible agent of WHC when providing medical services to Mrs. Street. Appended to appellant's motion for a stay was plaintiff's first set of interrogatories and first request for document production. These discovery requests sought information concerning WHC's ownership and management of the Physicians' Building, the history of Dr. Hedgepath's employment relationship with the Hospital Center, and signs or material available to, or provided to, the public concerning WHC's relationship to the doctors with offices in the Physicians' Building.[2] On June 15, 1987, the trial court denied appellant's cross-motion and ordered the filing of an opposition to WHC's summary judgment motion. In this opposition, appellant maintained that the fact that Dr. Hedgepath occupied an office at the Physicians' Building located very near the hospital, and that WHC had done nothing to put Mrs. Street on notice that Dr. Hedgepath did not have the Hospital Center's imprimatur, created a jury question on the ostensible agency issue. The trial court granted summary judgment in favor of WHC on July 24, 1987.[3]

## II.

Summary judgment is properly granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Owens v. Tiber Island Condominium Ass'n,* 373 A.2d 890, 894 (D.C.1977). In reviewing the trial court's entry of summary judgment, we ordinarily must decide "whether the trial court properly concluded that appellant did not meet his burden of setting forth specific facts demonstrating a genuine issue for trial,

2. More specifically, the interrogatories sought to learn, among other information, whether the Physicians' Building was a part of WHC; whether WHC itself performed services in the Physicians' Building; whether the building bore the name of WHC; the employment status of Dr. Hedgepath with WHC during 1986 and the prior ten years; his office locations during that time; whether Dr. Hedgepath shared offices with any hospital employee; and methods used to advise the visiting public and patients that doctors occupying office space at the Physicians' Building were not WHC employees but independent contractors. The document request sought, among other documents, agreements between Dr. Hedgepath and WHC for 1986 and the previous ten years, the doctor's lease or rental agreement, and documents concerning the need to construct the Physicians' Building.

3. Appellant claims that the trial court erred in directing that the July 24, 1987, summary judgment order be entered as a final judgment pursuant to Super.Ct.Civ.R. 54(b), and thereby presumably seeks a stay of the appeal pending resolution of the suit against Dr. Hedgepath in the trial court. There was no error. *See Cullen v. Margiotta,* 811 F.2d 698, 710–11 (2d Cir.1987) (certification not improper in multiple party situation where complaint is dismissed as to one defendant and where same or closely related issues do not remain to be litigated against the undismissed defendants) (construing comparable federal rule), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

and, if appellant did not, whether the trial court correctly applied [the law] to the undisputed facts." *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C.1975). Appellant claims that the undisputed facts existing at the time at which the summary judgment order was entered raised a material issue for trial, as did the facts that would have been disclosed in the answers to his first set of interrogatories and his first request for document production.[4] Considering both the facts of record, and the categories of information appellant sought to document through discovery—and assuming, solely for the sake of argument, that this court would permit the application of an ostensible agency theory to establish vicarious tort liability—we cannot agree.

The principles of ostensible or apparent agency are set forth in the RESTATEMENT (SECOND) OF AGENCY § 267 (1958):

> One who represents that another is his [or her] servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he [or she] were such.

Courts have held hospitals liable for the negligence of physicians working as independent contractors where those physicians have been furnished through the hospital's own institutional processes. More specifically, cases permitting liability against hospitals under an ostensible agency theory concern emergency room physicians working as independent contractors, or specialists providing services to such physicians, who were supplied by the hospital to an emergency admittee rather than selected by the patient. *See, e.g., Paintsville Hospital v. Rose*, 683 S.W.2d 255, 256–58 (Ky. 1985) (providing list of cases); *Pamperin v. Trinity Memorial Hospital*, 144 Wis.2d

188, 192–93, 423 N.W.2d 848, 849–50 (1988); *Jackson v. Power*, 743 P.2d 1376, 1381–82 (Alaska 1987); *Mehlman v. Powell*, 281 Md. 269, 272–75, 378 A.2d 1121, 1123–24 (1977). These jurisdictions have reasoned that patients often seek emergency care and treatment from a hospital, not from any particular physician, and are generally unaware of the employment status of the various professional personnel working in the emergency room. Therefore, absent a situation in which the patient is directed by, or selects, his or her own physician, the reputation of the hospital is the basis underlying selection of emergency care. Under these circumstances, the courts have concluded, a hospital should not be able to escape liability for negligent service provided by an independent contractor to an emergency admittee. *See Pamperin*, 144 Wis.2d at 204–05, 423 N.W.2d at 854–55 (summarizing reasons for imposing hospital liability set forth in *Hardy v. Brantley*, 471 So.2d 358, 371 (Miss.1985); *Arthur v. St. Peters Hospital*, 169 N.J.Super. 575, 582–84, 405 A.2d 443, 447 (1979); and *Paintsville Hospital*, 683 S.W.2d at 258).

Appellant argues that the facts of the present case raise a material issue concerning WHC's liability for Dr. Hedgepath's negligence under an ostensible agency theory. He asserts that we do not need direct evidence of the elements of representation and reliance to find ostensible agency but possess a sufficient factual basis in both existing and discoverable facts to infer an ostensible agency relationship circumstantially. We agree that, in cases concerning liability for negligence of hospital emergency room physicians working as independent contractors—where the factual issues of representation and reliance are difficult to discern—other jurisdictions do not require an express representation to the patient that the treating physician is an employee of the hospital nor direct testimony as to actual reliance to find ostensible agency,

---

**4.** Appellant raises for the first time on appeal a claim that summary judgment was inappropriate because his discovery requests, when answered, would have elucidated facts raising a jury question concerning WHC's liability under a theory of corporate negligence. Because this theory was never presented in any of the papers or motions before the trial court, we decline to consider it. *See President & Directors of Georgetown College v. Diavatis*, 470 A.2d 1248, 1251 (D.C.1983).

but infer such representation and reliance from the circumstances themselves. *See Paintsville Hospital*, 683 S.W.2d at 256. However, even if we assume that the law in this jurisdiction would permit inferences of representation and reliance based on an emergency room factual scenario—an issue we do not decide—we believe the circumstances of the present case differ so significantly as to render such inferences invalid here.

Appellant no doubt urges us to consider the evidence of representation circumstantially because Mr. Street's deposition indicates that his wife never discussed with him her understanding of Dr. Hedgepath's relationship to WHC. However, the present case does not support the inference of representation that appellant would have us draw. Unlike an emergency room situation where representation can be inferred when emergency room doctors offer medical care to a patient in crisis who lacks a personal physician on the scene, Mrs. Street affirmatively selected Dr. Hedgepath to be her private physician and to assist her in monitoring her diabetes. Indeed, appellant cites no cases imposing hospital liability for the negligence of an independent contractor where a patient sought treatment directly from that particular physician. Moreover, in light of the reluctance of other jurisdictions to infer representation even when a private physician provides care within a hospital's four walls, *see, e.g., Porter v. Sisters of St. Mary*, 756 F.2d 669 (8th Cir.1985), we decline to do so when Dr. Hedgepath treated Mrs. Street in his private office in an adjacent office building, even though the building is owned by WHC. As for the reliance factor, the record directly refutes appellant's claim that Mrs. Street relied upon an assumption that Dr. Hedgepath was an employee of the hospital in choosing him as her physician. Mrs. Street selected Dr. Hedgepath because he had been recommended by her husband, who had seen him for many years.

In sum, we must conclude that there are no circumstances under which the known or discoverable facts in this case could create a jury question on the issue of ostensible agency. Even if the facts adduced through discovery were favorable to appellant, demonstrating, for example, that Dr. Hedgpath was a hospital employee just before Mrs. Street became his patient, or that many WHC employees worked in the Physicians' Building which had been built specifically to encourage use of the hospital, or that WHC staff referred patients to doctors with offices in the Physicians' Building, such facts would still be insufficient to establish ostensible agency in light of Dr. Hedgepath's status as an independent physician explicitly chosen by Mrs. Street because her husband referred her to him.

*Affirmed.*