Diana SWORD and Carl Sword, Jr., Appellants–Plaintiffs,

v.

NKC HOSPITALS, INC., Alliant Health System, Inc. d/b/a Norton's Children's Hospital, Appellee–Defendant.

No. 10A05–9408–CV–322.

Court of Appeals of Indiana.

Jan. 31, 1996.

Rehearing Denied March 25, 1996.

Derrick H. Wilson, Mattox & Mattox, New Albany, for appellants.

James M. Gary, Weber & Rose, P.S.C., Louisville, Kentucky, for appellee.

## OPINION

BARTEAU, Judge.

Diana and Carl Sword appeal from the entry of summary judgment in favor of NKC Hospitals, Inc., Alliant Health System, Inc., d/b/a Norton's Children Hospital (hereinafter "Norton Hospital"), a Kentucky hospital.

### *ISSUE*

We consolidate and restate the dispositive issues raised on appeal as:

1. Whether a hospital may be held liable for the negligent acts of an independent contractor.

2. Whether the trial court erred in determining that the Swords failed to demonstrate that their injuries resulted from the actions of an anesthesiologist.

### *FACTS*

The facts taken in a light most favorable to the non-movants are as follows. The Swords selected Norton Hospital in Louisville, Kentucky as the medical facility in which Diana would deliver their first child. During labor, Diana received an epidural anesthetic which was administered by Dr. Luna, an anesthesiologist at Norton Hospital. Dr. Luna first attempted to insert a catheter into Diana's upper spinal cord near her neck, but was unsuccessful. Dr. Luna then administered the anesthetic by inserting the catheter into Diana's spine in her lower back.

Soon after delivering her healthy baby, Diana began experiencing headaches, sensitivity to light and loud noises, and numbness in her back.

### *DISCUSSION*

■ In summary judgment proceedings, the party moving for summary judgment

must show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant establishes that no genuine issue of fact exists, the party opposing summary judgment must set forth specific facts indicating that there is a genuine issue in dispute. If the non-moving party fails to meet this burden, summary judgment in favor of the moving party is appropriate. *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, 18, *trans. denied.*

■ Further, the party moving for summary judgment must designate to the trial court all parts of the matters included in the record on which it relies for the motion. The opposing party likewise must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind.Trial Rule 56(C). Any doubt as to the existence of a factual issue should be resolved against the moving party, construing all properly asserted facts and reasonable inferences in favor of the non-movant. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630, 633.

The Swords seek to hold Norton Hospital liable for the negligence of Dr. Luna, an anesthesiologist who practices medicine at Norton Hospital. The parties do not dispute that Dr. Luna was not an employee of Norton Hospital, and practiced medicine at Norton Hospital as an independent contractor. The trial court granted Norton Hospital's motion for summary judgment based upon Indiana law that hospitals may not be held liable for the negligence of independent contractor doctors. *See Iterman v. Baker* (1938), 214 Ind. 308, 15 N.E.2d 365; *see also, South Bend Osteopathic Hosp., Inc. v. Phillips* (1980), Ind.App., 411 N.E.2d 387, *trans. denied; Ross v. Schubert* (1979), 180 Ind. App. 402, 388 N.E.2d 623, *reh'g dismissed,* 396 N.E.2d 147, *trans. denied; Huber v. Protestant Deaconess Hosp.* (1956), 127 Ind. App. 565, 133 N.E.2d 864, *trans. denied; Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415, *trans. denied.* The Swords ask that we revisit this issue, and consider whether Norton Hospital may

be held liable under the doctrine of apparent agency.

## Apparent Agency

■ The Swords argue that Norton Hospital should be held liable for the negligence of Dr. Luna, despite the fact that Dr. Luna is an independent contractor, under the doctrine of apparent agency. Many courts have recognized such liability based upon either or both of two theories arising under the specter of apparent agency, in some cases confusing the two and misapplying the analysis. *See* D. Janulis & A. Hornstein, *Damned If You Do, Damned If You Don't: Hospitals' Liability for Physicians' Malpractice,* 64 Neb.L.Rev. 689, 696–702 (1985). The first theory is commonly referred to as ostensible agency, and is based upon Restatement (Second) of Torts, § 429, which states:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

The second theory is commonly referred to as agency by estoppel, and is predicated on Restatement (Second) of Agency, § 267:

> One who represents that another is a servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

The Swords invite us to adopt either of these Restatement provisions and find that Norton Hospital may be held liable for Dr. Luna's alleged negligence. While we decline to adopt either of the Restatement provisions at this time, we find that the Swords may state a claim against Norton Hospital under existing Indiana law.

■ Indiana recognizes the doctrine of apparent agency and follows the rule that a principal may be held liable by a third party

for the negligence of one whom the principal holds out as its agent.

> Like an actual agency relationship, an apparent agency is also initiated by a manifestation of the principal. However, the required manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal.... The essential element being there must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party.

*Hope Lutheran Church v. Chellew* (1984), Ind.App., 460 N.E.2d 1244, 1248 (citing *Stuteville v. Downing* (1979), 181 Ind.App. 197, 199, 391 N.E.2d 629, 631; *Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind.App. 295, 312, 352 N.E.2d 821, 832, *trans. denied; Storm v. Marsischke* (1973), 159 Ind.App. 136, 138, 304 N.E.2d 840, 842). Our Supreme Court established long ago that a third party may hold a principal liable for the negligence of its apparent agent.

> Where one represents to another that a designated person is his servant or agent, and induces the person to whom such representations are made to confide therein, and he acts upon the belief that such relationship does in fact exist, an action may be maintained for the servant's negligence, *although the relationship of master and servant did not exist.*

*Growcock v. Hall* (1882), 82 Ind. 202, 203–04.[1] Still, no Indiana case has ever applied the doctrine of apparent agency and found that a hospital may be held liable for injuries sustained by a patient as the result of the negligence of an independent contractor.

Indiana hospitals' insulation against liability for the negligence of independent contrac-

tor doctors may be traced to our Supreme Court's decision in *Iterman*, 214 Ind. 308, 15 N.E.2d 365. Therein, the Court recognized that, while other jurisdictions held hospitals accountable for independent contractor doctors's negligence under apparent agency, such an approach was not viable in Indiana because Indiana statutes prohibited hospital corporations from practicing medicine.

> The right to practice medicine and surgery under a license by the state is a personal privilege. It cannot be delegated, and a corporation, or other unlicensed person, may not engage in the practice of medicine by employing one who is licensed to do the things which constitute practicing the profession.... There are cases holding that a corporation is estopped from denying that a physician is its agent, and that it is liable for the physician's negligence, where the corporation has contracted to diagnose or treat diseases.

> An estoppel can only arise where the party claiming it has acted to his injury without full knowledge of the facts and without an equal opportunity to know the facts. It cannot arise out of a lack of knowledge of the law, since all have an equal opportunity to know the law, and are presumed to know it. The complaint charges that the corporation contracted to diagnose and treat plaintiff's ailments; that it was negligent in performing the contract. The defense is that the corporation made no such contract because it had no power to make it. An estoppel would deny the corporation the right to assert illegality.... There can be no estoppel on such a basis. Since the corporation could not legally practice medicine, the appellee was bound to know that whoever treated him was not acting for the corporation.

---

1. The dissent posits that "a party cannot be deemed an agent and an independent contractor in the same breath." At 17. However, as we noted in *Burkett v. Crulo Trucking Co.* (1976), 171 Ind.App. 166, 180, 355 N.E.2d 253, 261:

> Employees, servants, and independent contractors, as well as other categories of persons, may, in the proper circumstances, be described as agents. Professor Seavey classifies all agents as either servants or non-servants and designates the latter as a type

of independent contractor. W. Seavey, *Handbook on the Law of Agency* § 6 (1964). While "employee" and "servant" may have variant connotations, modern case law tends to treat the words as virtually synonymous in agency applications. *Although [the plaintiff] seems to view "agent" and "independent contractor" as mutually exclusive descriptions, they are not. An independent contractor may well be an agent. An example is the attorney representing a client.* (Emphasis added).

214 Ind. at 316–17, 15 N.E.2d at 370. In other words, the *Iterman* Court concluded that because hospitals could not practice medicine under Indiana law, no patient could reasonably conclude that those who were practicing medicine in hospitals were the hospitals's employees. This rationale has stood as a shield, protecting hospitals from liability for the negligence of health care professionals whom the hospitals hire as independent contractors.

However, cases and statutory changes subsequent to *Iterman* have opened Indiana hospitals to potential liability for the negligence of physicians practicing within hospitals's facilities, and have eroded the foundation for insulating hospitals from such liability. We now find that there is no reason under law or policy for shielding hospitals from liability for the negligence of their agents, and instead find several reasons justifying such liability.

As noted in *Iterman*, other jurisdictions have found that hospitals may be held liable for the negligence of independent contractor doctors in certain situations, and the rationale behind doing so is not a new idea. *See, e.g., Houghland v. Grant* (1995), App., 119 N.M. 422, 891 P.2d 563; *Gilbert v. Sycamore* (1993), 156 Ill.2d 511, 190 Ill.Dec. 758, 622 N.E.2d 788; *Mondello v. New York Blood Center—Greater New York Blood Program* (1992), 80 N.Y.2d 219, 590 N.Y.S.2d 19, 604 N.E.2d 81; *McClellan v. Health Maintenance Organiz. of Penn.* (1992), 413 Pa.Super. 128, 604 A.2d 1053, *appeal denied*, 532 Pa. 664, 616 A.2d 985; *Chase v. Independent Practice Ass'n Inc.* (1991), 31 Mass.App.Ct. 661, 583 N.E.2d 251; *Baptist Mem. Hosp. Sys. v. Smith* (1991), Tex.App., 822 S.W.2d 67, *reh'g denied; Orlando Reg'l Med. Center, Inc., v. Chmielewski* (1990), Fla.App., 573 So.2d 876, *review denied; Alicea v. New Brunswick Theological Seminary* (1990), 244 N.J.Super. 119, 581 A.2d 900, *aff'd*, 128 N.J. 303, 608 A.2d 218; *Street v. Washington Hosp. Center* (1989), D.C.App., 558 A.2d 690; *Sharsmith v. Hill* (1988), Wyo., 764 P.2d 667; *Pamperin v. Trinity Mem. Hosp.* (1988), 144 Wis.2d 188, 423 N.W.2d 848; *Shepard v. Sisters of Providence* (1988), 89 Or.App. 579, 750 P.2d 500; *Brown v. Coastal Emerg. Serv., Inc.* (1987), 181 Ga.App. 893, 354 S.E.2d 632, *aff'd*, 257 Ga. 507, 361 S.E.2d 164;

*Smith v. St. Francis Hosp., Inc.* (1983), Okla. App., 676 P.2d 279; *Adamski v. Tacoma Gen. Hosp.* (1978), 20 Wash.App. 98, 579 P.2d 970; *Vanaman v. Milford Mem. Hosp., Inc.* (1970), Del., 272 A.2d 718.

This is not without parallel in Indiana. In *Sloan v. Metro. Health Council* (1987), Ind. App., 516 N.E.2d 1104, 1106–09, we recognized that the rationale for shielding hospitals from liability for their employees's negligence has eroded over time, and found that *Iterman*'s holding that hospital corporations could not be held liable for the malpractice of employee physicians is no longer viable. Indiana statutes now hold corporate entities such as hospitals liable for the negligent acts of employees. *See* Ind.Code 23–1.5–2–1 to I.C. 23–1.5–5–2; *Sloan*, 516 N.E.2d at 1106–09; *Estate of Mathes v. Ireland* (1981), Ind. App., 419 N.E.2d 782, 786, *reh'g denied; see also, Vogler v. Dominguez* (1993), Ind.App., 624 N.E.2d 56, *reh'g denied, trans. denied; Yaney by Yaney v. McCray Mem. Hosp.* (1986), Ind.App., 496 N.E.2d 135. Thus, the rationale of *Iterman*—that patients could not reasonably conclude that doctors are agents or servants of the hospitals in which they practice because hospitals cannot practice medicine—is now without foundation in law or policy. *See Sloan*, 516 N.E.2d at 1107.

Under the nature of health care services today, it is entirely possible for a reasonable, prudent person to conclude from representations made by hospitals that the doctors and health care professionals that service patients within the hospitals's facilities are agents or servants of the hospitals. As the Supreme Court of Wisconsin recently noted in *Kashishian v. Port* (1992), 167 Wis.2d 24, 481 N.W.2d 277, *reh'g denied:*

> [H]ospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services. One need only pick up a daily newspaper to see full and half page advertisements extolling the medical virtues of an individual hospital and the quality health care that the hospital is prepared to deliver in any number of medical areas. Modern hospitals have spent billions of dollars marketing themselves, nurturing

the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital. In essence, hospitals have become big business, competing with each other for health care dollars.

*Id.* 167 Wis.2d 24, 481 N.W.2d at 282. Hospitals often represent to the public that the health care professionals they provide to their patients are superior to those employed by competitor hospitals, in an effort to attract patients and the revenue derived from them. Because hospitals stand to profit from their representations concerning the quality of services provided by those hired to treat patients, either as employees or independent contractors, it would be anomalous for hospitals to escape liability if those same health care professionals delivered services below minimally accepted standards, let alone the heightened degree of quality often represented in the hospitals's advertisements. *See Pamperin,* 423 N.W.2d at 855.

We therefore find that hospitals may be held liable for the negligence of their apparent agents, notwithstanding the fact that the agents are independent contractors. For a hospital to be held liable for the negligence of a health care professional under the doctrine of apparent agency, a plaintiff must show that the hospital acted or communicated directly or indirectly to a patient in such a manner that would lead a reasonable person to conclude that the health care professional

who was alleged to be negligent was an employee or agent of the hospital, and that the plaintiff justifiably acted in reliance upon the conduct of the hospital, consistent with ordinary care and prudence.[2] A hospital is not liable for the plaintiff's injuries if the plaintiff knew, or should have known, that the allegedly negligent health care professional is an independent contractor.

■ In support of their claim, the Swords point to evidence demonstrating various representations Norton Hospital made concerning its expertise in caring for expectant mothers. Like many hospitals, Norton Hospital aggressively marketed its services to the public. Norton Hospital stated in brochures that its Women's Pavilion is "the most technically sophisticated birthplace in the region." R. 228. And particular to this case, Norton Hospital advertised that it offers:

> [I]nstant access to the specialized equipment and facilities, as well as to physician specialists in every area of pediatric medicine and surgery. Every maternity patient has a private room *and the full availability of a special anesthesiology team, experienced and dedicated exclusively to OB patients.*

R. 228 (emphasis added). Norton Hospital made similar claims in other advertisements as well. *See* R. 229, 230. And, one brochure stated that:

> The Women's Pavilion medical staff includes the only physicians in the region who specialize exclusively in obstetrical an-

---

**2.** The Restatement (Second) of Torts, § 429 does not require that a third party act in reliance upon the representations of the principal in order to establish liability. And, while the Restatement (Second) of Agency, § 267 does include reliance as an element of liability, Illustration 3 to that Restatement section indicates that reliance is not essential to the cause of action. That illustration is as follows:

> 'L, a department store, contracts with T, as an independent contractor to give medical attention to patrons of the store, T appearing as an employee of D. D is liable for negligent medical care rendered by T.

Many jurisdictions have found that under either Restatement provision a patient may hold a hospital liable without a showing that the patient relied upon representations made by the hospital, often in cases alleging negligence on the part of emergency room physicians. *See e.g., Orlando*

*Reg. Med. Center, Inc. v. Chmielewski* (1990), Fla. App., 573 So.2d 876, *review denied; Arthur v. St. Peters Hosp.* (1979), 169 N.J.Super. 575, 405 A.2d 443; *Mduba v. Benedictine Hosp.* (1976), 52 A.D.2d 450, 384 N.Y.S.2d 527.

As noted *supra,* we have declined to adopt either Restatement provision and instead have applied existing Indiana law on the doctrine of apparent agency. As espoused by our Supreme Court in *Growcock,* it is a necessary requirement that a third party "act[ ] upon the belief that [the agency] relationship does in fact exist. . . ." 82 Ind. at 203. Therefore, our analysis includes the requirement that the Swords demonstrate that they justifiably acted in reliance upon Norton Hospital's representations. We leave to our Supreme Court the task of reconsidering the reliance requirement in the rule of *Growcock* in light of the Restatement provisions and contemporary jurisprudence.

esthesiology. They are immediately available within the unit 24 hours a day *and are experts in administering continuous epidural anesthesia.*

R. 232 (emphasis added). The Swords cite these advertisements and claim that they justifiably relied upon Norton Hospital's representations concerning its staff of expert obstetrical anesthesiologists, and in particular its representations that its obstetrical anesthesiology "team" members were experts in administering epidurals—the exact procedure which allegedly caused Diana's injury. Further, the Swords argue that a reasonable person would conclude from the representations made by Norton Hospital that the anesthesiologists Norton Hospital provides to patients are its agents.

Whether the representations made by Norton Hospital concerning its obstetrical anesthesiology team would lead a reasonable person to conclude that Dr. Luna was an agent of Norton Hospital, and whether the Swords exercised ordinary care and prudence and justifiably relied upon the representations of Norton Hospital, are genuine issues of material fact to be resolved by a jury after considering all of the circumstances in evidence.

> Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital.... "Such appearances speak much louder than the words of whatever private contractual arrangements the physicians and the hospital may have entered into, unbeknownst to the public, in an attempt to insulate the hospital from liability for the negligence, if any, of the physicians."

*Gilbert v. Sycamore Mun. Hosp.* (1993), 156 Ill.2d 511, 190 Ill.Dec. 758, 764, 622 N.E.2d 788, 794 (citing *Arthur v. St. Peters Hosp.* (1979), 169 N.J.Super. 575, 405 A.2d 443, 447;

*Brown v. Coastal Emergency Serv., Inc.* (1987), 181 Ga.App. 893, 354 S.E.2d 632, 637, *aff'd,* 257 Ga. 507, 361 S.E.2d 164). That Dr. Luna practiced anesthesiology at Norton Hospital as an independent contractor does not shield Norton Hospital from liability for Dr. Luna's negligence as a matter of law.

### Causation

■ The Swords also challenge the trial court's finding that the affidavits they submitted in response to Norton Hospital's motion for summary judgment failed to establish that a genuine issue of material fact exists as to whether Dr. Luna's alleged negligence caused their injuries.

Norton Hospital argues on appeal, as it did in its motion for summary judgment, that the Swords failed to adduce any expert evidence stating that Dr. Luna's negligence caused the injuries Diana allegedly sustained. In support of this, Norton Hospital points to Diana Sword's deposition in which she stated that none of the doctors that examined her attributed her symptoms to the epidural she received while at Norton Hospital.

The Swords responded to Norton Hospital's motion for summary judgment with the affidavits of Dr. Davidson and Dr. Milan. Doctor Davidson's affidavit states that, in his opinion, Dr. Luna's care fell below the standard of care required by physicians administering an epidural. R. 98. Doctor Milan's affidavit states that "Plaintiff's symptoms of low back pain and headaches are consistent with the loss of spinal fluid which accompanied the insertion of the epidural in the cervical region of the Plaintiff's back." R. 100. Norton Hospital argues that the doctors's affidavit testimony do not establish that Dr. Luna's alleged negligence *caused* Diana's injuries, only that her injuries are *consistent* with a loss of spinal fluid. Norton Hospital concludes that the Swords have failed to demonstrate that a genuine issue of material fact exists, and that it therefore is entitled to judgment as a matter of law. We disagree.

■ While the doctors' affidavits do not expressly state that Dr. Luna's negligence caused Diana's injuries, from the testimony

that Diana's symptoms are consistent with a loss of spinal fluid a reasonable juror could conclude that her injuries resulted from the aborted epidural. Summary judgment is inappropriate where a jury could reach different conclusions from the undisputed facts. *See Bochnowski v. Peoples Fed'l Savings & Loan* (1991), Ind., 571 N.E.2d 282, 285. Every available inference must be resolved in favor of the Swords, the non-moving party. *Perry v. Stitzer Buick, GMC, Inc.* (1994), Ind., 637 N.E.2d 1282, 1286, *reh'g denied*. In so doing, we find that whether Dr. Luna breached the standard of care and caused the Swords's alleged injuries is a genuine issue of material fact to be resolved by the jury. Summary judgment is inappropriate.

REVERSED.

CHEZEM, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I dissent. The majority concludes "hospitals may be held liable for the negligence of their apparent agents, notwithstanding the fact that the agents are independent contractors." Op. at 15. I cannot agree because the law in this state is clear, unequivocal, and of long duration that absent certain exceptions not relevant here, an employer may not be held liable for the negligent acts of his independent contractor employees. *Daugherty v. Fuller Engineering Serv. Corp.*, 615 N.E.2d 476, 480 (Ind.Ct.App.1993), *trans. denied; Smith v. P. & B. Corp.*, 179 Ind.App. 693, 386 N.E.2d 1232, 1235 (1979); *Zimmerman v. Baur*, 11 Ind.App. 607, 39 N.E. 299, 303 (1894). I recognize that the law is not a static phenomenon and in a proper case a court may depart from the doctrine of *stare decisis* in order to vindicate plain and obvious principles of law or to remedy continued injustice. However we have no such case before us.

There is no dispute that the negligence of an agent may be imputed to the principal. *See e.g., Green v. Perry*, 549 N.E.2d 385, 388 (Ind.Ct.App.1990), *trans. denied; Jack Ward Chevrolet, Inc. v. Mikel*, 525 N.E.2d 349, 350 (Ind.Ct.App.1988), *trans. denied*. And this is so whether the agent is actual or apparent.

However, a party cannot be deemed an agent and an independent contractor in the same breath. The underlying rationales are different and they stand in opposition to one another. More specifically, the general rule that a principle is liable for the torts of his agents is not grounded on agency principles. Rather, tort liability is based on an employer-employee relationship. *Dallas Moser Transporters, Inc., v. Ensign*, 594 N.E.2d 454 (Ind.Ct.App.1992). This is as it should be. In our system of tort liability based upon fault, if a party is to be held liable for the acts of another, then the party should have the right or power to control the other's conduct. *Id.* at 457 *citing Bitzer v. Pradziad*, 571 N.E.2d 593, 596 (Ind.Ct.App.1991), *trans. denied*. Such right exists where the parties' relationship is that of a typical employer and employee. Therein lies the basis for the rule that an agent's negligence may be imputed to the principal. On the other hand, the relationship between an employer and an independent contractor is quite different. "An independent contractor is one who, [ ] exercising an independent employment, contracts to do certain work according to his own methods and without being subject to the control of his employer except as to the product of his work." *Furr v. Review Bd. of Indiana Employment Sec. Div.*, 482 N.E.2d 790, 794 (Ind.Ct.App.1985). Because of this lack of control by the employer we have long held that the employer of an independent contractor is generally not liable for the torts of that contractor. *See, e.g. Hale v. Peabody Coal Company*, 168 Ind.App. 336, 343 N.E.2d 316 (1976).

In this jurisdiction the rule that a hospital is not liable for the negligent act of its physicians and surgeons was first announced in *Iterman v. Baker*, 214 Ind. 308, 15 N.E.2d 365 (1938). That case seemed to suggest that a hospital could not be held liable even if the allegedly negligent physicians or surgeons were employees of the hospital. This was so because under the statutes then in existence, "a corporation, or other unlicensed person, [could] not engage in the practice of medicine by employing one who is licensed to do the things which constitute practicing the profession.... Since the corporation could

not legally practice medicine, the appellee was bound to know that whoever treated him was not acting for the corporation." *Iterman*, 15 N.E.2d at 370.[1] Because of the enactment of Ind.Code § 23–1.5, commonly referred to as the Professional Corporation Act of 1983 (Act), the underlying rationale of *Iterman* has been eroded. The Act, which applies to health care providers, among others, provides in pertinent part "[a] corporation whose employees perform professional services within the scope of their employment or their apparent authority to act for the corporation is liable to the same extent as its employees." I.C. § 23–1.5–2–6(c). In *Sloan v. Metro Health Council*, 516 N.E.2d 1104 (Ind.Ct.App.1987), we determined "the Act stands as a pronouncement of public policy concerning a corporation's vicarious liability for the acts of its employee-physicians." *Id.* at 1107; *see also Tarr v. Jablonski*, 569 N.E.2d 378 (Ind.Ct.App.1991), *reh'g denied, trans. denied* (determining the proposition under *Iterman* that a corporation could not be held liable for the malpractice of a physician is no longer viable).

It is now clear that a hospital may be held liable for the acts of a physician performing services on the hospital's premises. However, as we recently reaffirmed in *Weaver v. Robinson*, 627 N.E.2d 442 (Ind.Ct.App.1993), *rejected on other grounds, Kennedy v. Murphy*, 659 N.E.2d 506 (Ind.1995), that is so only where the physician is an employee of the hospital and the hospital is aware that the care the physician is providing has deviated from normal practice. *Id.* In this case there is no dispute that Doctor Luna was employed by Norton Hospital as an independent contractor. She could not therefore have also served as the hospital's agent, apparent or otherwise, because she was not an employee over whom the hospital exercised control except "as to the product of [her] work." *Furr*, 482 N.E.2d at 794. Under the settled law of this state Doctor Luna's negligence as an independent contractor can not be imputed to Norton Hospital. I therefore dissent and would affirm the trial court's

entry of summary judgment in the hospital's favor.

---

1. Also, *Iterman* has been cited for the proposition that a hospital is generally not liable for the medical negligence of doctors on its staff because doctors are considered independent contractors as a matter of law. *See Yaney by Yaney v. McCray Memorial Hosp.*, Ind.App., 496 N.E.2d 135, 137 (Ind.Ct.App.1986).