In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-3080

COURTNEY WEBSTER and BRIAN WEBSTER,

*Plaintiffs-Appellees*,

*v.*

CDI INDIANA, LLC, d/b/a CDI,
d/b/a CDI INDIANAPOLIS,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-02677-JMS-DML — **Jane E. Magnus-Stinson**, *Chief Judge*.

_____

ARGUED FEBRUARY 4, 2019 — DECIDED FEBRUARY 27, 2019

_____

Before WOOD, *Chief Judge*, and EASTERBROOK and ST. EVE,
*Circuit Judges*.

ST. EVE, *Circuit Judge*. This medical malpractice lawsuit
arises from a radiologist's negligence. Courtney Webster had
a CT scan performed at CDI Indiana, LLC's (CDI) diagnostic
imaging facility in Carmel, Indiana. The radiologist, an in-
dependent contractor hired by Medical Scanning Consult-

ants (MSC), missed Courtney's cancer, which then festered for over a year before being diagnosed.

Courtney and her husband, Brian Webster, sued CDI. CDI, in response, insisted that the Websters could not hold it liable because CDI did not directly employ the radiologist. The district court rejected this argument and applied Indiana's apparent agency holding in *Sword v. NKC Hosp., Inc.*, 714 N.E.2d 142, 152 (Ind. 1999), which instructs that a medical provider is liable if a patient reasonably relied on its apparent authority over the wrongdoer. The jury returned a $15 million verdict in favor of the Websters. We agree with the district court's analysis and so we affirm.

## I. Background

In 2009, Courtney had outpatient surgery for rectal cancer, and by 2010, her medical examinations showed no further signs of cancer. A few years later in October 2014, Courtney visited her gastroenterologist complaining of constipation. She underwent a colonoscopy, which revealed a large mass. The gastroenterologist then referred Courtney for an abdominal and pelvic CT scan. Radiation technologists conducted Courtney's CT scan on November 17, 2014 at CDI's Carmel facility, and radiologist Dr. Brian Walker issued his report the following day. In his report, Dr. Walker did not identify any mass, despite the images showing a mass in the presacral space where Courtney's rectal cancer had originally occurred.

Less than two years later, Courtney again complained of constipation. A scope performed in April 2016 revealed a tumor, and a CT scan the following week showed that the tumor had increased in size since the November 2014 CT

scan. By the time the cancerous mass was diagnosed, Courtney's cancer had metastasized to her lungs and liver. The delay in diagnosing Courtney's recurrent rectal cancer resulted in a dramatic reduction of her prospects for survival.

CDI has a network of medical diagnostic imaging facilities throughout the country, including Indiana. Relevant to this appeal, CDI had entered into a services agreement with MSC under which MSC provided independent contractor radiologists, such as Dr. Walker, to interpret CDI's imaging studies at CDI's Carmel facility.

In October 2016, the Websters filed this medical malpractice lawsuit against CDI in federal court based on diversity jurisdiction. That is not the norm for Indiana medical malpractice claims. Typically, such claims fall under Indiana's Medical Malpractice Act (the Act), which limits liability for registered qualified health care providers and requires the presentation of a proposed complaint to a medical review panel before an action can be commenced in court. *Thompson v. Cope*, 900 F.3d 414, 424 (7th Cir. 2018); *McKeen v. Turner*, 71 N.E.3d 833, 834 (Ind. 2017) (per curiam). The Act sets up a voluntary, state-sponsored liability insurance program imposing statutory caps that limit a claimant's recoverable damages, *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 51 (Ind. 2013), and provides that Indiana's Patient Compensation Fund will pay amounts in excess of the qualified health care provider's total liability, *Robertson v. B.O.*, 977 N.E.2d 341, 343 (Ind. 2012). For a health care provider to be "qualified" under the Act, it must register with Indiana's Department of Insurance by filing proof of financial responsibility and paying an annual surcharge that funds Indiana's Patient Compensation Fund. *Atterholt v. Herbst*, 902 N.E.2d 220, 222

(Ind. 2009); *Wisniewski v. Bennett*, 716 N.E.2d 892, 895 (Ind. 1999).

Because CDI had not registered with Indiana's Department of Insurance as a "qualified health care provider" pursuant to the Act, the Websters sued CDI based on Indiana Code § 34-18-3-1. That section states "[a] health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article. If a health care provider does not qualify, the patient's remedy is not affected by this article." Unlike CDI, both MSC and Dr. Walker had registered as qualified health care providers under the Act. The Websters, therefore, filed a medical malpractice complaint with the Indiana Department of Insurance against Dr. Walker and MSC.

After discovery in the CDI litigation, the Websters and CDI filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a). In its motion, CDI argued that Dr. Walker was not its apparent agent under *Sword* because CDI did not employ or contract for Dr. Walker's services, rather MSC did. In a well-reasoned and thorough opinion, the district court concluded that the Supreme Court of Indiana's apparent agency holding in *Sword* applied to the circumstances of this case. Applying *Sword's* apparent agency standard—which focuses on the principal's manifestations and the patient's reliance—the district court concluded, "[g]iven the nature of health care services today, it is entirely possible for a reasonable, prudent patient to conclude from representations made by a medical center that the doctors and health care professionals that service patients within the center's facilities are agents or servants of the center." *Webster v. Ctr. for Diagnostic Imaging, Inc.*, No. 1:16-cv-02677-JMS-

DML, 2017 WL 3839377, at *8 (S.D. Ind. Aug. 31, 2017). The district court denied the parties' summary judgment motions because there were "genuine issues of material fact in dispute as to whether Dr. Walker was an apparent or ostensible agent of the center" and whether CDI "may be held liable for any of Dr. Walker's asserted negligent acts." *Id.* at *9.

The case proceeded to a jury trial, which lasted five days. MSC's medical director testified that CDI was responsible for every aspect of obtaining a patient's radiological imaging study except for the actual interpretation of the study itself. Further, the parties jointly stipulated that CDI was responsible for the training, hiring, employing, supervising, disciplining, and discharging of the radiation technologists and non-physician personnel at CDI's Carmel location. They also stipulated that MSC does business as CDI and that MSC uses the trade name CDI and related trademarks to assist in marketing its services as part of a national provider network. Courtney testified that she had no idea about the relationships among MSC, CDI, and Dr. Walker and that she was never provided information or written notice about the different entities. Courtney, in fact, believed CDI had provided the health care services in relation to her November 2014 CT scan.

The jury returned a verdict in favor of the Websters, finding CDI vicariously liable for Dr. Walker's negligent conduct. Further, the jury awarded the Websters a total of $15 million in damages. The district court denied CDI's post-trial motions, after which CDI appealed, arguing the district court erred by applying *Sword's* apparent agency holding to this case.

## II. Discussion

*Sword* is at the heart of this appeal, so we start there. In *Sword*, the plaintiffs brought a medical malpractice suit against a hospital due to the medical negligence of an independent contractor anesthesiologist. The parties asked Indiana's highest court whether a hospital "could be held liable for the alleged negligence of its independent contractor physician." *Sword*, 714 N.E.2d at 144. The Supreme Court of Indiana answered yes.

In doing so, the court relied on existing Indiana jurisprudence, as well as the law of other jurisdictions, to adopt the doctrine of apparent agency set forth in the Restatement (Second) of Torts § 429 (1965). *Id*. at 151–52. The *Sword* court specifically held, "[u]nder Section 429, as we read and construe it, a trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care." *Id*. at 152. The court explained that this inquiry involves the "totality of circumstances" based on the "actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians." *Id*. The Indiana Court of Appeals has applied *Sword's* holding beyond the hospital setting, including in the context of a health care center or clinic. *Helms v. Rudicel*, 986 N.E.2d 302, 306 (Ind. Ct. App. 2013).

On appeal, CDI argues that the district court erred in applying *Sword* because CDI did not hire Dr. Walker as an independent contractor. In examining CDI's argument, "our duty is to answer any question of state law in the same way (as nearly as we can tell) as the state's highest court would." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir.

2018). Accordingly, we review the district court's interpretation of state law *de novo*. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

*Sword* applies here as the district court properly recognized. Nothing in *Sword's* holding indicates that a health care facility must have a direct employment relationship with an independent contractor physician to be held liable for the acts of its apparent agent. This is especially true given the nature of health care services today. *See Sword v. NKC Hosps., Inc.*, 661 N.E.2d 10, 14 (Ind. Ct. App. 1996), *rev'd on other grounds*, 714 N.E.2d 142 (Ind. 1999). Accepting CDI's contrary argument would mean that health care facilities could easily evade liability by using independent contractor professional organizations to employ physicians. Put differently, a medical center cannot hold itself out to the public as offering health care services—and profit from providing those health care services—yet escape liability by creating a complex corporate arrangement of interrelated companies. We are hard-pressed to believe Indiana law would favor that result.

Equally important, CDI's position conflicts with *Sword's* explicit focus on the medical center's manifestations and the patient's reliance—as opposed to employment contractual formalities. As the district court astutely observed, "[i]f anything, the complicated web of interrelated entities in this case … illustrates the paramount importance of the *Sword* factors in an increasingly complicated and opaque medical environment." *Webster*, 2017 WL 3839377, at *8. CDI's argument that Dr. Walker was an independent contractor hired by MSC, therefore, is of no moment unless Courtney was aware of any such contractual relationship. *See Sword*, 714

N.E.2d at 152. She was not; Courtney testified at trial that she had no idea about the contractual relationships among MSC, CDI, and Dr. Walker and she was never provided information that the physician who would be interpreting her CT scan was not subject to CDI's control or supervision.

CDI makes other arguments on appeal. CDI asserts, for example, that extending *Sword's* vicarious liability principles to the facts of this case violates the public policy behind the Act because it would expose qualified health care providers, like Dr. Walker, to common law implied indemnity claims in excess of the Act's statutory $1.25 million damages cap. CDI also argues that "non-negligent" parties, such as CDI, should not be required to pay greater damages than a negligent party. We need not address these arguments. CDI waived them by withholding them until its post-trial Rule 50(b) renewed motion for judgment as a matter of law. *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 604 (7th Cir. 2017) ("If the court denies the Rule 50(a) motion, that party may renew its earlier motion under Rule 50(b), but it may raise only the grounds it advanced in the pre-verdict 50(a) motion.").

Furthermore, CDI did not address the district court's waiver rulings in its opening brief on appeal. So, it has also forfeited these arguments. *McCleskey v. CWG Plastering, LLC*, 897 F.3d 899, 901 (7th Cir. 2018); *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018).[1]

---

[1] Although CDI filed a post-trial Rule 59 motion for remittitur, on appeal, its discussion of damages is intertwined with its forfeited arguments.

On a final note, because there is no genuine uncertainty about the question of state law that CDI presents on appeal, we decline to certify CDI's proposed questions to the Supreme Court of Indiana pursuant to Circuit Rule 52(a). *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 754 (7th Cir. 2018).

We AFFIRM the district court's judgment.