Michael J. WISNIEWSKI, Appellant (Plaintiff Below),

v.

Donna BENNETT, Commissioner of Insurance, Appellee (Defendant Below).

No. 45S05–9909–CV–497.

Supreme Court of Indiana.

Sept. 24, 1999.

Marshall P. Whalley, April L. Board, Merrillville, Indiana, Attorneys for Appellant.

Mary J. Hoeller, John C. Trimble, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case deals with a plaintiff's ability to access the Patient's Compensation Fund under the Medical Malpractice Act where an agreement to settle and payment of the settlement amount were made by an insurance company that had not qualified its provider under the Act and was not authorized to write malpractice insurance in Indiana. We hold that the Fund cannot be accessed to cover excess liabilities of entities who have not paid into the Fund.

### Factual and Procedural Background

From 1986 to 1990, Michael J. Wisniewski was treated by Dr. Kishan Chand at Southeastern Medical Centers for injuries to his leg resulting from an automobile accident. Throughout the period of treatment, Chand and Southeastern were insured under separate policies by the Illinois State Medical Insurance Exchange (ISMIE), each with a one million dollar limit. Neither Chand nor Southeastern was a "qualified health care provider" as a result of this insurance because neither they nor ISMIE filed proof of financial responsibility with the Insurance Commissioner or paid the required surcharge. Chand carried no other relevant insurance, but in 1988, Southeastern also had a $100,000 policy issued by the Physicians Insurance Company of Indiana (PICI). PICI paid the surcharge and qualified Southeastern for 1988 only.

In 1990, Wisniewski filed suit in the Lake Superior Court against Chand, Southeastern and several others alleging medical malpractice resulting in permanent damage to his leg. He also filed a proposed complaint with the Department of Insurance and initiated the Medical Review Panel proceedings required by the Medical Malpractice Act before a claim may be pursued against a qualified health care provider. The Medical Review Panel issued an opinion finding that Southeastern failed to meet the applicable standard of care and that its liability was based on the care provided by Chand as an employee or officer of Southeastern. The panel found that the other defendants did meet the standard of care. Because Chand was not a qualified provider, he was not required to be, and was not, named in the panel proceedings.

The lawsuit was then settled for $112,500. Wisniewski executed separate releases of Chand and Southeastern. These two documents, which were not signed by anyone other than Wisniewski, recited that they reserved Wisniewski's right to proceed against the Fund. ISMIE paid Wisniewski with two checks, for $12,500 and $100,000, both through Chand's policy. Wisniewski then filed a petition in the trial court to access the Fund for damages in excess of the settlement amount.

The Commissioner of the Department of Insurance, who administers the Fund, responded by a motion for summary judgment on the ground that Wisniewski had failed to satisfy the conditions precedent to petition the Fund. The trial court granted the Commissioner's motion for summary judgment, but the Court of Appeals reversed and remanded, holding that (1) a genuine issue of material fact existed as to whether Southeastern agreed to settle Wisniewski's claim; and (2) if Southeast-

ern had agreed to settle, the trial court must determine whether Wisniewski's damages occurred during the time Southeastern was a qualified provider and whether those damages meet the $100,000 threshold requirement to permit access to the Fund. *Wisniewski v. Bennett,* 693 N.E.2d 1341 (Ind.Ct.App.1998). The Commissioner and Wisniewski both petitioned for transfer. We grant both petitions.

It is unclear from this record why Wisniewski sought recovery from the Fund rather than pursuing a conventional claim against Chand or Southeastern in view of the million dollar policies ISMIE issued to Southeastern and Chand for the relevant period. Whatever the reason, we are left with the issue of whether this arrangement permits Wisniewski to access the Fund.

## Standard of Review

■ Summary judgment is appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *see Meridian Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 698 N.E.2d 770, 773 (Ind.1998). Although Wisniewski has the burden of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court. *Erie Ins. Co. v. George,* 681 N.E.2d 183, 186 (Ind.1997); *Mullin v. Mun. City of South Bend,* 639 N.E.2d 278, 280–81 (Ind.1994). All facts and reasonable inferences drawn from those facts are construed in favor of Wisniewski. *Foster v. Auto–Owners Ins. Co.,* 703 N.E.2d 657, 659 (Ind.1998); *Wright v. Carter,* 622 N.E.2d 170, 171 (Ind.1993).

## Access to the Patient's Compensation Fund

Wisniewski argues that the trial court erred in granting summary judgment in favor of the Commissioner because his settlement with Southeastern meets the provisions of the Act and entitles him to access the Fund. The Commissioner contends that Wisniewski's unilateral release of Southeastern and Chand does not amount to an "agreement" with a qualified provider as required by the statute to access the Fund. The Commissioner further argues that even if Southeastern had agreed to settle, payment by ISMIE, who is not an insurer of a qualified provider under the Act, does not meet the Act's requirement that a "qualified provider or its insurer" have settled a liability "by payment."

The Act is explicit that "[a] health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article. If a health care provider does not qualify, the patient's remedy is not affected by this article." IND.CODE § 34–18–3–1 (1998).[1] In addition, "[o]nly while malpractice liability insurance remains in force are the health care provider and the health care provider's insurer liable to a patient or the patient's representative for malpractice to the extent and in the manner specified in this article." *Id.* § 34–18–13–1.

The Act permits a plaintiff to access the Fund for damages in excess of $100,000 up to $750,000 "[i]f a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of one hundred thousand dollars ($100,-000)." *Id.* § 34–18–15–3. Section 34–18–3–1 makes clear that the health care provider must be qualified. Accordingly, access requires an "agreement to settle" in which payment of "its policy limits"[2] is made by a qualified health care provider

1. The Medical Malpractice Act was previously codified at Indiana Code §§ 27–12–1–1 to 27–12–18–2. It was recodified at §§ 34–18–1–1 to 34–18–18–2 in 1998. The current statute is used throughout this opinion.

2. The function of the term "of its policy limits" in this section is unclear. The entire statutory scheme assumes that a provider's policy limit is $100,000. This section requires a payment of $100,000 even if the

or the "insurer" of a qualified provider. "Insurer" and "qualified health care provider" are both defined terms. *See id.* §§ 34–18–2–17 & 34–18–2–24.5. Although Southeastern and Chand were insured by ISMIE, neither was a qualified health care provider by reason of the ISMIE policy during Wisniewski's treatment. To qualify as a provider under the Act, "the health care provider or the health care provider's insurance carrier shall: (1) cause to be filed with the commissioner proof of financial responsibility established under IC 34–18–4; and (2) pay the surcharge assessed on all health care providers under IC 34–18–5." *Id.* § 34–18–3–2. It is undisputed that ISMIE and its insured did neither with respect to the ISMIE policy.

Wisniewski argues that his settlements meet the Act's requirements because Southeastern was also insured by PICI for one year and was a qualified provider for that time. Wisniewski contends that all the Act requires is an agreement with a qualified health care provider, and his agreement with Southeastern, although not expressed in the written documents, is sufficient to access the Fund. In addition to the release documents, Wisniewski also designated the affidavit of his attorney, Marshall Whalley, as evidence of Southeastern's agreement to settle. Whalley's affidavit states:

5. That I negotiated the instant settlement with qualified health care provider Southeastern and non qualified health care provider Kishan Chand, M.D., personally through my contacts with the attorney for both parties, William Satterlee.

6. That the settlement with qualified health care provider Southeastern was entered into with the specific intent that said settlement would be done as a vehi-

cle to allow access to the Patient's Compensation Fund.

■ We have recently addressed the requirement of an agreement with a qualified health care provider. *See Smith v. Pancner,* 679 N.E.2d 893, 896 (Ind.1997). In *Smith,* the agreement in question purported to settle the plaintiff's claim by payment from the insurer of the doctor's wholly-owned, non-qualified corporation. Because parties are not precluded from "agreeing to settle orally or only partially in writing," we held that a question of fact remained as to whether the qualified doctor had agreed to the settlement, and reversed summary judgment. *Id.* at 895. The Commissioner urges us to reconsider whether an oral agreement can meet this requirement, pointing out that allowing an oral agreement to qualify permits disputes over precisely who agreed to what. That may be a problem, but if so, it is one for the legislature to address. The Act does not by its terms require any formality to an agreement to settle and we are not prepared to import one.

■ Whalley's affidavit and the release documents in concert with the payment of $112,500, are sufficient for the trier of fact to infer an agreement by Chand and Southeastern to settle their dispute with Wisniewski. In short, we agree with the Court of Appeals that a material issue of fact exists on the question of whether there was an agreement to settle. Accordingly, summary judgment on that ground was inappropriate. However, summary judgment was appropriate for another reason. Even if Southeastern agreed to settle, the Act also requires that a qualified provider or its insurer "settle its liability on a claim *by payment* of its policy limits." IND.CODE § 34–18–15–3 (1998) (emphasis added). Assuming the facts are as Wis-

policy provided less coverage. The term "of its policy limits" raises some question as to what happens if a qualified provider, out of concern for validity of the statute or for whatever other reason, has a higher policy limit. Perhaps none do, but here, if Chand were a

qualified provider by reason of his ISMIE policy, that would be the case. In any event, as indicated above, the critical point for this case is who paid the $100,000, not whether that amount was also the policy limit.

niewski contends, it is undisputed that IS-MIE, which was not acting as an insurer of a qualified provider, paid Wisniewski's claim.

There are two reasons why ISMIE's payment does not fit the statutory requirement. First, the evidence designated by the Commissioner demonstrates that IS-MIE is not an "insurer" as defined by the Act. "Insurer" means "an insurance company engaged on an admitted or nonadmitted basis in making in this state class 2(h) malpractice liability insurance" under section 27-1-5-1. *Id.* § 34-18-2-17. The insurer to which this refers is plainly the carrier whose policy is filed as proof of financial responsibility to establish the provider as a "qualified provider" under Indiana Code § 34-18-4-1. Indiana Code § 27-1-5-1 requires insurance companies to be "authorized" to write insurance by the Department of Insurance. The Commissioner designated the affidavit of Roger Webb, the Deputy Commissioner of the Securities/Financial Records division at the Department of Insurance, stating that after reviewing the Department's records, he "could not find the Illinois State Medical Interinsurance Exchange as holding a certificate of authority as a domestic insurance company or as a foreign or alien insurance company." Wisniewski provides no evidence to contradict the Commissioner's designation on this point. Because ISMIE is not authorized, it is not—indeed cannot be—an "insurer" of a qualified provider within the meaning of the Act. Consequently, its payment of Wisniewski's claim does not amount to payment by a "provider or its insurer" and is insufficient to permit access to the Fund.

The payment by ISMIE fails to qualify Wisniewski to access the Fund for another reason. The basic theory of the Fund is that those providers who get the benefit of the Act also pay for the excess coverage provided by the Fund. ISMIE has made no contribution to the Fund on Southeastern's behalf, and indeed did not pay "its policy limits." Under these circumstances it is not an "insurer" of a "qualified provider" as those terms are used in the Act. Rather it is merely an issuer of a policy to a qualified provider, but a policy that is as irrelevant to the malpractice act as the qualified provider's automobile liability policy.

In *Smith* we held that the payment by the insurer of a non-qualified health care provider who agreed to settle was insufficient to access the Fund. However, we noted that if the trial court determined on remand that the qualified doctor had agreed to settle, payment by the doctor's insurer would permit the patient to access the Fund because a qualified provider or its insurer would have agreed to settle by payment. *Smith,* 679 N.E.2d at 896. Although the insurer who paid the settlement on behalf of the qualified doctor also insured the non-qualified corporation that employed the doctor, the relevant insurance was the policy that qualified the doctor under the Act. We observed in *Smith* that, if the doctor agreed to settle, the patient "will be entitled to access to the Fund precisely because his agreement was with a qualified health care provider with respect to whom the Fund has received surcharge payments." *Id.* Even if Southeastern had agreed to the settlement, because only PICI was an insurer of Southeastern for purposes of the Act, the payment by ISMIE was not by the provider's insurer as defined by the Act.

Wisniewski argues that the fact that IS-MIE paid Wisniewski is not determinative and points to several sections of the Act to demonstrate that "payment" is not a linchpin of access to the Fund. One provision permits a patient to access the Fund if the present payment from the provider plus the cost of the periodic payment agreement exceeds $75,000. *See* IND.CODE § 34-18-14-4 (1998). Another provision permits payment from the Fund of the first $100,000 if the provider does not pay the amount within ninety days. *See id.* § 34-18-15-4 (1998). It is clear that the General Assembly intended patients who

have settled a claim through a periodic or "structured" payment agreement to access the Fund. It is equally clear that, in some circumstances, those who have settled but not yet received the $100,000 from a qualified provider as agreed may proceed against the Fund. But these provisions shed no light on the issue presented in this case. The question here is whether the statute permits Wisniewski to access the Fund based on his receipt of $112,500 from ISMIE who is neither a qualified provider nor an insurer under the Act. Nothing in the statutory provisions Wisniewski cites suggests that *who* pays the settlement is irrelevant to accessing the Fund. To the contrary, the Act requires that the provider or its insurer "agree to settle by payment." It means what it says.

Finally, the purposes of both the Act and the Fund would be frustrated by the result Wisniewski seeks. To preserve an acceptable standard of health care and an adequate number of providers in Indiana, the General Assembly established a state sponsored liability insurance program. *See Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 379–380, 404 N.E.2d 585, 589–90 (1980). If health care providers comply with the requirements of the Act, including paying the yearly surcharge, the Act caps liability for those providers who pay the first $100,000 on a claim. If providers and insurers who have not paid the yearly surcharge that maintains the Fund are permitted to avoid liability by paying the first $100,000 on a claim from some other source, including personal funds, and shift the remaining liability to the Fund, the financial viability of the Fund is undermined. In addition, it would be fundamentally unfair to other providers and insurers to permit Chand and ISMIE, who did not pay into the Fund, and Southeastern, who paid into the Fund for a fraction of the exposure period, to shift their financial liability to the Fund. The Fund was not designed to be, in effect a free excess carrier for insurance companies who have received premiums and accepted the risk of malpractice by their insured. Rather

only those who contribute to the Fund are intended to get its benefits.

In sum, an agreement to settle by payment with an entity who has not paid into the Fund and is not an insurer as defined by the Act does not meet the requirements for access to the Fund.

### Conclusion

The trial court's grant of summary judgment for the Commissioner is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.