# FOR PUBLICATION



**FILED**

Feb 10 2012, 8:19 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSAN E. CLINE**
LEWIS WAGNER, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT D. BROWN**
KENNETH J. ALLEN & ASSOC., P.C.
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

COMMISSIONER OF THE INDIANA )
DEPARTMENT OF INSURANCE, )
)
    Appellant-Defendant, )
)
        vs. )    No. 64A05-1104-CT-240
)
TIM BLACK, as Husband and Personal )
Representative of KAY BLACK, Deceased, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Jeffrey L. Thode, Special Judge
Cause No. 64D05-0904-CT-3206

**February 10, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, the Commissioner of the Indiana Department of Insurance (the Commissioner), appeals the trial court's denial of his motion to dismiss and its order granting Appellee-Plaintiff's, Tim Black (Black), as husband and personal representative of Kay Black, deceased, Petition for Payment of Damages from the Patient's Compensation Fund in an amount of $1,000,000.00.

We reverse and remand.

## ISSUE

The Commissioner raises two issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court properly denied the Commissioner's motion to dismiss, concluding that Black satisfied the conditions precedent for access to the Patient's Compensation Fund (PCF) as outlined in Ind. Code § 34-18-15-3.

## FACTS AND PROCEDURAL HISTORY

This appeal arises out of an underlying claim for medical malpractice in which Black filed a complaint against his wife's, Kay Black (Kay), health care providers for failing to diagnose Kay's cardiac condition. On October 26, 2000, Kay presented to the emergency room of Porter Memorial Hospital complaining of severe chest pain radiating down her left arm and nausea. A blood enzyme test came back as abnormal, possibly indicating the onset of a heart attack. Dr. Fred Harris (Dr. Harris), a cardiologist, was consulted by telephone. Dr. Harris did not come to the emergency room nor did he order repeat enzyme testing or heart monitoring. Instead, Dr. Harris advised the emergency

2

room doctor that Kay was not having, nor was she about to have, a heart attack and agreed to admit Kay with a diagnosis of abdominal pain to the general floor without heart monitoring equipment. At approximately 3 a.m. the following morning, Kay suffered a severe cardiac arrest that placed her in a debilitated cardiac state, resulting in the need for a heart transplant. On September 22, 2008, Kay died from a condition unrelated to the malpractice.

On November 13, 2001, Kay and Black filed a proposed complaint for damages under the Indiana Medical Malpractice Act against Dr. Harris, Abdus Lakhani, M.D., Samara Kester, M.D., and Porter Memorial Hospital. The proposed complaint alleged that the defendants had rendered negligent medical care to Kay, resulting in permanent injury, medical expenses, lost earnings and loss of enjoyment of life. The medical review panel unanimously concluded that Dr. Harris had failed to comply with the appropriate standard of care.

On March 31, 2009, Black, as husband and personal representative of Kay, filed a Petition for Payment of Damages from the PCF, asserting that Dr. Harris had agreed "to make payment of his liability limit in the amount of $250,000.00, thereby establishing liability of the [PCF] under the Act." (Appellant's Amended App. p. 13). Responding to the Petition, the Commissioner indicated that he did not have sufficient information to form a belief as to the truth or falsity of the allegations in general and specifically the assertion that Dr. Harris had agreed to make payment. In essence, the Commissioner contended that Black had failed to satisfy all conditions precedent for access to the PCF. On April 21, 2009, the Commissioner served discovery seeking additional information

about the claim. Specifically, the Commissioner sought the production of all documents evidencing payment received in connection with Kay's injury, as well as a copy of all fully executed settlement agreements entered into by Black and any health care provider concerning the underlying medical malpractice cause.

Nearly a year later, on March 3, 2010, Black provided an unauthenticated copy of a check dated April 3, 2009 in the amount of $250,000.00 from the Medical Assurance Company Co., Inc. made payable to Black and his counsel. No other annotation appears on the check. Black objected to the production of the settlement agreement stating that the agreement contained a confidentiality clause that prohibited him from disclosing the document. On May 6, 2009, Black served Requests for Admissions, asking the Commissioner to admit, among other things, that Black and Dr. Harris had entered into a settlement agreement and payment of Dr. Harris' liability limit had been tendered to Black. The Commissioner responded that he could not admit or deny the request as Black had failed to provide a copy of the settlement agreement. On May 17 and May 20, 2010, well over a thousand additional medical records, deposition transcripts, and other documents were disclosed but again, no settlement agreement was provided.

Subsequently, on May 26, 2010, the Commissioner's counsel sent correspondence to Black pursuant to Ind. Trial Rule 26(F) in an attempt to informally resolve the discovery disputes pertaining to the release of the settlement agreement and to the disclosure of voluminous medical records and depositions barely a month before a scheduled June 29, 2010 damages hearing. In her letter, counsel asserted that the settlement agreement was necessary to establish the identity of the settling health care

4

provider and to evaluate whether Black had met the conditions precedent of the Medical Malpractice Act to gain access to the PCF, and any additional terms which could impact Black's payment from the PCF. Black never responded to this letter. Thereafter, on May 28, 2010, the Commissioner moved to continue the bench trial scheduled for June 29, 2010. The trial court granted the motion and continued the damages hearing to November 30, 2010.

On October 29, 2010, the Commissioner filed his verified motion to dismiss for failure to state a claim and to vacate trial setting, asserting that by refusing to disclose the settlement agreement in the underlying medical malpractice action, Black had failed to satisfy the conditions precedent for access to the PCF. By filing the motion, the Commissioner sought to have the cause dismissed without prejudice. On November 5, 2010, Black responded, claiming that pursuant to the provisions of the Medical Malpractice Act he was not required to provide the settlement agreement and that the evidence tendered to date was sufficient to gain access to the PCF. Attached to Black's response was a copy of the unauthenticated check in the amount of $250,000.00, as previously submitted, as well as copies of correspondence between Black's counsel and Dr. Harris' counsel referencing an acceptance to the settlement amount "contingent upon [an] agreement to a confidentiality clause and other customary settlement terms as set out in the form of Settlement and Agreement Release[.]" (Appellant's Amended App. p. 118). No Settlement and Agreement Release was attached.

On November 29, 2010, a day before the scheduled bench trial on damages, the trial court conducted a hearing on the Commissioner's motion to dismiss. During the

hearing, the Commissioner reiterated his position that a settlement agreement needed to be submitted because

> [n]ot every health care provider or physician in the State of Indiana is covered under the Medical Malpractice Act, so there has to be a determination that that provider is, in fact covered. And once that determination is made, then did that provider meet all of the criteria, did the plaintiff then meet the criteria of the Act in order to make their petition to the [PCF] for excess damages. . . . There has to be a determination that the settling health care provider has paid the surcharge and has provided proof of financial responsibility.

(Transcript pp. 5-6). The Commissioner assured the trial court that he stood ready to settle the cause for the maximum statutory amount upon confirming that Black satisfied the condition precedent for access to the PCF. But he could "not make any payment without the settlement agreement." (Tr. p. 10). The following day, on November 30, 2010, and prior to the scheduled hearing, the trial court denied the Commissioner's motion.

On November 30, 2010, the trial court conducted a bench trial on the issue of damages. At the onset of trial, the Commissioner stipulated that the value of Black's claim was $1,000,000.00, the statutory cap for medical negligence, subject to the submission of a settlement agreement that met the conditions precedent for access to the PCF. At the close of Black's case-in-chief, the Commissioner moved for judgment on the evidence, which the trial court took under advisement. In its case-in-chief, the Commissioner presented no evidence, he again reiterated his stipulation that Black's claim was valued at $1,000,000.00 subject to presentation of an appropriate settlement agreement, and renewed his position that Black had failed to meet the conditions

6

precedent for access to the PCF. On December 3, 2010, the trial court entered its Order granting Black's Petition for Payment of Damages from the PCF in the amount of $1,000,000.00.

On December 29, 2010, the Commissioner filed a motion to correct error claiming that the trial court had erred (1) by granting Black access to the PCF without evidence that he had met the conditions precedent of the Medical Malpractice Act; (2) by denying the Commissioner's motion for judgment on the evidence; and (3) by awarding damages without evidence of an underlying settlement. On February 23, 2011, the trial court held a hearing on the motion to correct error. During the hearing, the Commissioner again assured the trial court and Black that he stood ready to settle the cause for the statutory cap and asked the trial court to order production of the settlement agreement to allow the Commissioner to confirm Black's eligibility to access the PCF. On April 20, 2011, the trial court denied the motion.

The Commissioner now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

The Commissioner contends that the trial court erred in denying his motion to dismiss for failure to state a claim. However, for the first time on appeal, Black disputes the characterization of the Commissioner's motion as a motion to dismiss pursuant to Ind. Trial Rule 12(B)(6). He asserts that because additional supporting documents were attached to the motion to dismiss, the Commissioner's motion was converted into a motion for summary judgment pursuant to T.R. 56. We agree.

A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Godby v. Whitehead*, 837 N.E.2d 146, 149 (Ind. Ct. App, 2005), *trans. denied*. We view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. *Id*. In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id*. However, if on the motion "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as" a motion for summary judgment. T.R. 12(B).

In his motion to dismiss, the Commissioner specified that Black had failed to satisfy the conditions precedent for access to the PCF, referencing the inadequate discovery responses and the lack of settlement agreement. Attached to the motion were several exhibits, including, among others, correspondence indicating Black's refusal to disclose the settlement agreement. Black responded to the Commissioner's motion to dismiss with a memorandum, which included an unauthenticated copy of the check in the amount of 250,000.00 paid by the Medical Assurance Company Co., Inc. to Black and his counsel, as well as a copy of the letter pertaining to settlement negotiations between Black's counsel and counsel for Dr. Harris.

Even though the trial court in its Order alluded to the Commissioner's "Motion to Dismiss Claim," it did not explicitly exclude the exhibits and other materials attached to the Commissioner's motion or Black's response. Moreover, we are hard pressed to see how the trial court could have reached its conclusion without evaluating the submitted

8

attachments. Black's Petition for Payment merely asserted that "Harris agreed to make payment of his liability limit in the amount of $250,000.00, thereby establishing liability of the [PCF] under the [Medical Malpractice Act]." (Appellant's App. p. 13). It was only after discovery was commenced and interrogatories and requests for admissions were sought that the lack of settlement agreement became evident. As such, we will treat the Commissioner's motion to dismiss as a motion for summary judgment.[1]

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

Here, the Commissioner's claim is focused on Black's inability to satisfy the conditions precedent for access to the PCF, most notably, on the lack of a settlement

---

[1] We acknowledge that in the event a motion to dismiss for failure to state a claim is characterized and treated as a motion for summary judgment, T.R. 12(B) requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." However, because all pertinent materials were submitted as supplemental documents with either the Commissioner's motion or Black's response thereto, we conclude that the violation of this requirement by the trial court did not prejudice the parties.

9

agreement. In this sense, the Commissioner is required to prove a negative, *i.e*., the non-existence of the settlement.

In *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc*., 644 N.E.2d 118, 123 (Ind. 1994), our supreme court declared that "[m]erely alleging that the plaintiff has failed to produce evidence on each element [of a cause of action] is insufficient to entitle the defendant to summary judgment under Indiana law." Despite numerous criticism over the years, *Jarboe's* ruling "has been understood by some courts to require [the moving party] to establish a negative proposition." *See Lenhardt Tool & Die Co., Inc. v. Lumpe*, 722 N.E.2d 824, 825 (Ind. 2000) (Boehm, J., dissenting from denial of transfer); *see also Cole v. Gohmann*, 727 N.E.2d 1111 (2000) (Baker, J. dissenting). In his well-known dissent to the denial of transfer in *Lenhardt Tool & Die Co, Inc*. (Shepard, C.J., concurring), Justice Boehm expressed his belief that Indiana courts have been too literal in interpreting and applying *Jarboe*. He noted that there appears to be "a widespread misunderstanding of how the summary judgment standard is to work under Trial Rule 56." *Lenhardt Tool & Die Co., Inc.*, 722 N.E.2d at 825. After a thorough review of the methodology of the summary judgment standard in federal courts as clarified in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 272 (1986), Justice Boehm concluded:

> Although under Indiana Trial Rule 56 *Jarboe* clearly rejected the view that a party seeking summary judgment could simply point to the opponent's burden of proof at trial and prevail unless the non-movant produced evidence supporting its claim of defense, *Jarboe* did not disable summary judgment as a tool to resolve matters as to which there is no genuine issue of material fact. Rather, . . . in my view under Indiana Trial Rule 56, as under federal practice, it is sufficient for summary judgment to establish on

undisputed facts either that: (1) the non-movant will be unsuccessful as a matter of law or (2) the non-movant will be unable at trial to establish an essential fact on which the non-movant carries the burden of proof.

*Id*. at 826-27 (internal citations omitted). He then further elaborated that in his view:

> [O]nce the movant has put forward evidence to (1) establish the elements of its claim or defense, or (2) negate an essential element of the non-movant's claim or defense, or (3) prove that the non-moving party will be unable to present evidence to prove an essential element of its claim or defense, the burden shifts to the non-movant to make a showing sufficient to establish the existence of a genuine issue for trial on each challenged element. This does not mean that there is a shift of the burden of persuasion on any element of a claim or defense or that the non-movant must establish its entire case to defeat a motion for summary judgment. It does mean, as Trial Rule 56 provides, that, once the movant meets its burden, the non-movant must articulate specific facts that show an issue of material fact requiring a trial.

*Id*. at 827-28 (internal citations omitted).

Today, we accept Justice Boehm's views on this subject expressed in his dissent from the denial of transfer in *Lenhardt Tool & Die Co., Inc*. as the better reasoned interpretation of Indiana Trial Rule 56 and explicitly adopt it to apply it to the unique circumstances before us. Moreover, reading our summary judgment in this light furthers the goals of a just, speedy, and inexpensive determination of an action where it can be established that the non-movant will be unable to produce evidence to support his claim or defense. It not only avoids unnecessary litigation, but as a byproduct, it also prevents the unnecessary escalation of the settlement value of a clearly flawed claim or defense based simply on the prospect of protracted, if ultimately unsuccessful, litigation. *Id*. at 826. In other words, there should be no reason to go to trial or prolong a proceeding if undisputed evidence establishes that an essential claim or defense is doomed to failure.

11

Therefore summary judgment is proper if, after sufficient opportunity for discovery, the movant can establish that the non-moving party bears the burden of proof. *Id.* With these principles in mind, we now turn to the merits of the Commissioner's appeal.

## II. *Access to the PCF*

The Commissioner contends that Black failed to satisfy the conditions precedent for access to the PCF as required by I.C. § 34-18-15-3. The statute, which is part of the Medical Malpractice Act, provides specific guidance and direction as to how and when a claim for excess damages from the PCF can be explored. Specifically, it states, in pertinent part, that:

> *If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of two hundred fifty thousand dollars ($250,000),* and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:
>
> (1) A petition shall be filed by the claimant in the court named in the proposed complaint, or in the circuit or superior court of Marion County, at the claimant's election, seeking:
>
>> (A) approval of an agreed settlement, if any; or
>> (B) demanding payment of damages from the patient's compensation fund.
>
> (2) A copy of the petition with summons shall be served on the commissioner, the health care provider, and the health care provider's insurer, and must contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
>
> \*\*\*
>
> (5) At the hearing, the commissioner, the claimant, the health care provider, and the insurer of the health care provider may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if the evidence is submitted on agreement without objections. If the commissioner, the health care provider, the insurer of the health care

provider, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, the court shall, after hearing any relevant evidence on the issue of claimant's damage submitted by any of the parties described in this section, determine the amount of the claimant's damages, if any, *in excess of the two hundred fifty thousand dollars ($250,000) already paid by the insurer of the health care provider.* The court shall determine the amount for which the fund is liable and make a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established.

I.C. § 34-18-15-3 (emphasis added). Although the statute is silent as to the existence of a settlement agreement as a condition precedent for access to the PCF, the statutory provisions clearly state, as an opening premise and again in its fifth paragraph, that in order for a claimant to make a claim against the PCF, he or she must submit materials evidencing that the medically negligent "health care provider or his insurer has agreed to settle the issue of liability by payment of the policy limits of $250,000." *See* I.C. § 34-18-15-3. Implicit within this provision is the premise of an underlying settlement agreement in the medical malpractice action. Without firm evidence of the settlement, the Commissioner and the trial court cannot be assured that the condition precedent for access to the PCF is satisfied.

While not directly on point, our supreme court in *Wisniewski v. Bennett*, 716 N.E.2d 892, 895 (Ind. 1999) opined that "[t]he Act does not by its terms require any formality to an agreement to settle and we are not prepared to import one." The supreme court analyzed whether the insurer of a non-qualified health care provider could contribute to a settlement in order to gain access to the PCF. *Id.* The court acknowledged that settlement agreements for access to the PCF could be oral, but also

13

looked at the terms of an attorney's affidavit and the "release documents" to determine whether there was sufficient evidence for the trier of fact to infer an agreement to settle the dispute. *Id.* Ultimately, the *Wisniewski* court looked at the totality of the materials and facts before it to determine whether the provider had agreed to the settle. *Id.*

In his Petition for Payment of Damages, Black alleged that "Harris agreed to make payment of his liability limit in the amount of $250,000.00, thereby establishing liability of the [PCF] under the Act." (Appellant's Amended App. p. 13). The Commissioner tendered a Request for Production for Documents to Black seeking, among other things, proof of the purported underlying settlement, including a copy of "all fully executed settlement agreements entered into by [Black] and any health care provider concerning this cause of action." (Appellant's Amended App. p. 74). Despite an attempt by the Commissioner to informally solve the discovery dispute, no settlement agreement has been submitted to date. Instead, Black provided an unauthenticated copy of a purported settlement check in the amount of $250,000 paid by The Medical Assurance Company Co., Inc. to Black and his counsel. No other annotation as to what the check pertained to or on whose behalf the payment was made was included on the check. Together with the unauthenticated copy of the check, Black submitted a copy of a letter from Dr. Harris' counsel to Black's counsel accepting a settlement demand of $250,000.00 "contingent upon [Black's] agreement to a confidentiality clause and other customary settlement terms as set out in the form of Settlement and Agreement Release, attached." (Appellant's App. p. 118). The Settlement and Agreement Release was not attached nor was it ever provided in discovery.

14

Relying on the confidentiality provision included in the purported settlement agreement, Black asserts that he is prohibited from tendering it to the Commissioner for review. Indiana Trial Rule 26(B)(1) provides that

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense or any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Because Trial Rule 26 was adopted from the Federal Rules of Civil Procedure, federal authorities are relevant to our discussion. *See Riggin v. Rea Riggin & Sons*, 738 N.E.2d 292, 309 (Ind. Ct. App. 2000). In *DirecTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 683 (D. Kansas 2004), the Kansas district court evaluated, among others, the assertion that settlement negotiations and agreements should not be discoverable because of confidentiality and concluded that

> A general concern for protecting confidentiality does not equate to privilege. Thus information and documents are not shielded from discovery merely because they are confidential. Moreover this [c]ourt has held that in the context of settlement agreements the mere fact that the settling parties agree to maintain the confidentiality of their agreement does not serve to shield the agreement from discovery. Simply put, litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality.

*Id*. at 684-85. *See also State v. Hogan*, 588 N.E.2d 560, 563 (Ind. Ct. App. 1992) (where we held with respect to a claim of privilege that absent an articulation of specific reasons why the documents sought are privileged, the information is discoverable).

15

Our discovery rules are designed to allow a liberal discovery procedure, the purposes of which are to provide parties with information essential to the litigation of all relevant issues, to eliminate surprise and to promote settlement, with a minimum of court involvement in the process. *Canfield v. Sandock*, 563 N.E.2d 526, 527 (Ind. 1990), *reh'g denied*. Mindful of this premise, we agree with the Commissioner that simply because Black and counsel for Dr. Harris may have agreed to confidentiality, that does not eliminate the fact that the underlying settlement agreement is relevant and necessary to the examination of Black's Petition for Damages and resulting access to the PCF.

Based on the facts before us, we conclude that there is a genuine issue of material fact whether Black has satisfied his condition precedent to warrant him access to the PCF. By submitting his discovery requests and correspondence indicating an attempt to informally solve a discovery dispute, the Commissioner presented sufficient evidence establishing that Black was unwilling or unable to present evidence which conclusively determined that Dr. Harris had settled the underlying medical malpractice claim pursuant to the statutory requirements of I.C § 34-18-15-3. At that point, the burden shifted to Black to present sufficient evidence to establish the existence of the settlement agreement in order to be granted summary judgment in his favor. To satisfy this burden, Black merely disclosed an unauthenticated copy of a check and correspondence purporting to be between Black counsel and counsel for Dr. Harris, alluding to settlement negotiations. However, this evidence is insufficient to establish that the amount was paid out on behalf of Dr. Harris and not on behalf of any other health care provider originally sued in the underlying medical malpractice action. It is also inadequate to ascertain whether the

16

terms of the settlement agreement allow access to the PCF. More specifically, the settlement agreement will indicate the theory of settlement—whether the cause was defined as a survival action or a wrongful death action;—any limitations placed on the amount recoverable from the PCF; whether the health care provider is qualified under the Medical Malpractice Act; or other contingencies which would impact the PCF's ability to pay. Thus, while we are not seeking to import a formality requirement into the Act, we find that based on the evidence before us, the trier of fact cannot reasonably conclude that a settlement agreement existed that would satisfy the conditions precedent of I.C. § 34-18-15-3 and would entitle Black to excess damages from the PCF. However, the evidence is sufficient to raise a genuine issue of material fact.

Moreover, accepting Black's argument that an allusion to a settlement agreement in the Petition for Damages and an unauthenticated check is sufficient to grant him access to the PCF would frustrate the purpose of the Medical Malpractice Act. To preserve an acceptable standard of health care and an adequate number of providers in Indiana, the General Assembly established a state sponsored liability insurance program. *See Johnson v. St. Vincent Hospital, Inc*., 404 N.E.2d 585, 589-90 (1990). This program includes a limit on liability exposure for health care providers who elect to participate and grants them coverage for excess liability via the PCF. *See Wisniewski*, 716 N.E.2d at 590. Thus if health care providers and claimants comply with the provisions of the Medical Malpractice Act, the Act is available to cap liability for those providers who have qualified under the Act and the PCF is responsible for paying the excess damages to those persons injured as a result of medical negligence. However, if unfettered reliance

17

on the PCF is allowed without regard to whether a claimant has sustained the conditions precedent for access, the PCF becomes exposed and its financial viability might be undermined. We therefore reverse the trial court's decision and remand for further proceedings.

## CONCLUSION

Based on the foregoing, we hold that a genuine issue of material fact exists whether Black has satisfied the condition precedent for access to the PCF pursuant to I.C. § 34-18-15-3.

Reversed and remanded for further proceedings.

FRIEDLANDER, J. and MATHIAS, J. concur